<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KEVIN HEUSTON,<br><br>     Plaintiff,<br><br>     v.<br><br>PROCEDYNE CORP.,<br><br>     Defendant. | Case No. 3:20-cv-07839 (BRM) (DEA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

  Before this Court is Defendant Procedyne Corp.'s ("Defendant") Motion to Dismiss the Amended Complaint and Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, (the "Motion"), and for attorneys' fees and costs. (ECF No. 10.) Plaintiff Kevin Heuston opposes the Motion. (ECF No. 12.) Defendant filed a reply (ECF No. 13), and Plaintiff filed a sur-reply (ECF No. 17). Having reviewed the filings submitted in connection with the Motion and having declined to hold oral arguments pursuant to Federal Rule of Civil Procedure 78(b), for the reasons below and for good cause shown, Defendant's Motion is **DENIED without prejudice** to renew after the parties complete limited discovery on the issue of arbitrability, and Defendant's request for attorneys' fees and costs is **DENIED with prejudice**.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

This action arises out of Plaintiff's allegations that Defendant violated Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et. seq.*; the Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12101 *et. seq.*; and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5–1 to –49.

Defendant is an engineering and equipment manufacturing company that specializes in fluid bed calciners, catalyst activators, and an array of other products. (ECF No. 8 ¶ 7.) Plaintiff was hired as a chemical operator by Defendant and worked for Defendant for approximately 1.5 years, starting in or about December 2018 until his termination on or about April 26, 2020. (*Id.* ¶¶ 9–10.) At no point during Plaintiff's employment was Plaintiff ever provided with a copy of any arbitration policy or agreement for his review or consideration, nor was any such agreement or policy ever discussed with Plaintiff. (*Id.* ¶ 12.) Plaintiff never agreed to any arbitration policy with Defendant, nor did Plaintiff ever inform Defendant he would sign any such forms concerning same. (*Id.* ¶ 13.) Moreover, Defendant's owner, Sholom Babad ("Babad"), never spoke with Plaintiff about any employee handbook or arbitration policy or agreement in place with Defendant, nor did Babad ever provide Plaintiff with a copy of any employee handbook or arbitration policy. (*Id.* ¶ 14.)

---

[1] For the purposes of the Motion, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Plaintiff, "is a black (African- American) male and one of only two black male employees out of approximately 40 overall employees in Defendant's New Brunswick, New Jersey facility." (*Id.* ¶ 17.) Plaintiff was primarily supervised by the Plant Manager, Ashock Patel ("Patel"), who subjected Plaintiff and the only other black employee to "pretextual discipline." (*Id.* ¶ 18.) Specifically, Patel favored employees of Asian-Indian descent, but regularly screamed and cursed at Plaintiff, consistently scrutinized or criticized Plaintiff's work, and often told him things like work faster "like Michael Jordan," despite Plaintiff being a hard-working employee who performed his job well. (*Id.* ¶¶ 17–19.) Plaintiff alleges he was unfairly and abruptly terminated because of his race and/or national origin. (*Id.* ¶ 22.)[2]

Plaintiff also believes he was unfairly terminated because of his known and/or perceived disabilities and his request for reasonable accommodations. (*Id.* ¶ 30.) At all relevant times, Plaintiff suffered from several disabilities, including circulatory and heart conditions. (*Id.* ¶ 23.) Defendant's managers, including Patel, knew of these conditions, which caused Plaintiff shortness of breath, chest tightness, and fatigue. (*Id.* ¶¶ 23–25.)[3] Moreover, after informing Defendant of his health conditions and requesting reasonable accommodations, Plaintiff was subjected to hostility and animosity by Patel. (*Id.* ¶ 27.) For example, Patel consistently followed Plaintiff around the workplace and would "yell[] at him that he was working too slow and needed to work harder," despite Plaintiff informing Patel he needed a break because of chest pain and breathing issues. (*Id.*)

---

[2] Plaintiff was informed he was being terminated because Defendant "did not have enough work," which Plaintiff alleges is "completely false and pretextual" because (1) Plaintiff was the only terminated employee, (2) there was plenty of work at the facility, and (3) following his termination Plaintiff's duties were given to an Asian-Indian employee with less experience than Plaintiff. (*Id.* ¶ 21.)

[3] Still, despite his aforementioned health conditions and limitations, "Plaintiff was [] able to perform the essential duties of his job well . . . ." (*Id.* ¶ 25.)

Plaintiff alleges he properly exhausted his administrative remedies to proceed under the ADA and Title VII because he timely filed Charges of Discrimination with the Equal Employment Opportunity Commission and was issued Notices of Right to Sue. (*Id.* ¶¶ 53, 56.) On June 26, 2020, Plaintiff filed a Complaint. (ECF No. 1.) On September 8, 2020, Defendant filed a Motion to Dismiss. (ECF No. 7.) On September 21, 2020, Plaintiff filed an Amended Complaint. (ECF No. 8.) On September 25, 2020, Defendant filed a Motion to Dismiss the Amended Complaint and Compel Arbitration. (ECF No. 10.) On October 16, 2020, Plaintiff filed an Opposition. (ECF No. 12.) On October 26, 2020, Defendant filed a Reply. (ECF No. 13.) On October 30, 2020, with permission from the Court (*see* ECF No. 16), Plaintiff filed a Sur-Reply. (ECF No. 17.)

## II.   LEGAL STANDARD

The Federal Arbitration Act "federalizes arbitration law and 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . .'" *John Hancock Mut. Life Ins. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n.32 (1983)). "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. To determine whether an agreement to arbitrate exists at all, which is Plaintiff's contention, the court shall apply "ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

In *MZM Construction Co., Inc. v. N.J. Building Laborers Statewide Benefits Funds*, Civ. A. Nos. 18-3791 & 19-3102, 2020 WL 5509703, at *14 (3d Cir. Sept. 14, 2020), relying on

*Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764 (3d Cir. 2013), the Third Circuit held that "if the complaint states a claim *or the parties come forward with facts that put the formation of the arbitration agreement in issue*, the court may authorize 'limited discovery' to resolve that narrow issue for purposes of deciding whether to submit the matter to arbitration." *MZM*, 2020 WL 5509703, at *14 (emphasis added); *Guidotti*, 716 F.3d at 776. Once discovery is complete on that "narrow issue," the movant may renew its motion to compel, and the court -- using a Rule 56 summary judgment standard -- considers the question anew. *MZM*, 2020 WL 5509703, at *14; *Maity v. Tata Consultancy Servs., Ltd.*, Civ. A. No. 21919861, 2020 WL 6268683, at *2 (D.N.J. Oct. 26, 2020).

### III. DECISION

#### A. Motion to Dismiss/Compel Arbitration

Here, Defendant contends it provided Plaintiff with a Conditional Offer of Employment ("Offer Letter") which states, in pertinent part,

> This job offer is contingent upon the following:
>
> - Assenting to Procedyne's Employee Handbook, as evidenced by signing the Employee Handbook's Acknowledgement of Receipt and agreeing to accept the terms contained therein. A copy of the Employee Handbook will be provided to you upon successful completion of the items listed above.
>
> This job offer is expressly contingent upon successful completion of the above referenced steps. Failure to comply with the contingencies contained in this Offer letter will result in Procedyne rescinding your employment offer.
>
> On your first day, you will be given an orientation by Human Resources. This orientation will include completing employment forms, reviewing fringe benefits, introduction to management and touring the premises.

(*Id.* at 7.)

Defendant contends Plaintiff signed the Offer Letter and was provided with a copy of the Employee Handbook ("Handbook") which contained an arbitration provision (the "Arbitration Agreement"). (ECF No. 10-1 at 6–7; *see* ECF No. 10-2 ("Decl. S. Badad").) According to Defendant, the Arbitration Agreement "clearly and unmistakably explained the rights Plaintiff would be waiving by agreeing to arbitration." (ECF No. 10-1 at 7.) At a meeting with Babad, Plaintiff was advised to contact Babad if he had any questions about the Handbook. (*Id.* at 7.) At the end of the meeting, Plaintiff agreed to sign the "Handbook Acknowledgement of Receipt and the Arbitration Acknowledgement" (the "Acknowledgment of Receipt"). (*Id.*) While Defendant cannot locate the signed acknowledgement forms, Plaintiff never contacted Babad with any questions about the Handbook. (*Id.*)[4]

Plaintiff does not dispute he signed the Offer Letter. Instead, he argues the Offer Letter "makes absolutely no reference" to the Arbitration Agreement. (ECF No. 12 at 10.) In fact, Plaintiff argues he "was never given the opportunity to review an employee handbook or any arbitration policy, let alone agree to one." (*Id.* at 9.) According to Plaintiff, he "never saw, reviewed, agreed to, or signed any arbitration acknowledgement form." (*Id.*)[5] Moreover, while the Offer Letter does state that employment will be rescinded if Plaintiff does not sign the Acknowledgement of Receipt, "Defendant concedes [] they have no record of [Plaintiff] completing or signing any of the forms or acknowledgements that their offer letter purports to

---

[4] Moreover, according to Defendant, "Plaintiff continued his employment with Procedyne for approximately ten months after assenting to and receiving the Handbook, without objection or question." (*Id.* at 21.) Therefore, while Defendant "cannot locate the signed acknowledgment forms, the signed Offer Letter together with Plaintiff's continued employment with Procedyne sufficiently manifests Plaintiff's assent to be bound by the terms and conditions of the Handbook, including the Arbitration Agreement." (*Id.*)

[5] Specifically, Plaintiff avers he "never met with Mr. Babad about the handbook or any arbitration policy." (*Id.* at 10.)

6

require as a condition of [] employment." (*Id.* at 10.) Therefore, according to Plaintiff, "it is simply impossible to conclude that [Plaintiff] was able to manifest assent, explicit or otherwise, to an arbitration policy he had no knowledge of and for which Defendant failed to educate him on." (*Id.* at 11.) In its Reply, Defendant contends Plaintiff received the Handbook "on three separate occasions," and was repeatedly asked to sign and return the Handbook. (ECF No. 13 at 2; ECF No. 13-1 at 1 ("Decl. L. Valdivia").) Further, Defendant argues the Court should reject any inclination to "conduct a mini-trial as to the issue of arbitrability because the actions of the parties and terms of the Handbook and Arbitration Agreement are clear and unambiguous." (*Id.* at 5.) In his sur-reply, Plaintiff maintains the parties did not agree to arbitrate any disputes because "he never received, reviewed, or otherwise assented to the arbitration Policy in Defendant's Handbook." (ECF No. 17 at 2.)

Here, the parties' briefs and supporting declarations demonstrate the parties have "come forward with facts that put the formation of the arbitration agreement in issue." *MZM*, 2020 WL 5509703, at *14. As such, limited discovery is in order under established Third Circuit precedent.

Accordingly, Defendant's Motion to Dismiss the Amended Complaint and Compel Arbitration is **DENIED without prejudice** to renew after the parties complete limited discovery under the supervision of the magistrate judge.

### B.     Attorneys' Fees and Costs

Defendant seeks attorneys' fees and costs in connection with this Motion. (*See* ECF No. 10-1 at 5.) The Court declines to award the requested fees and costs. "Under the American rule, each party normally must bear the burden of its own legal expenses . . . . One of the narrow exceptions to this rule is a finding that the losing party litigated in bad faith, vexatiously, or for oppressive reasons." *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 305

(3d Cir. 1982). "In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification or if the party resisting arbitration did not have a reasonable chance to prevail." *Chauffeurs, Teamsters & Helpers, Loc. Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir. 1980) (citations and internal quotation marks omitted). Here, there is no basis to find Plaintiff acted in bad faith in raising the issue of the validity of the Arbitration Agreement. Therefore, Defendant's request for attorneys' fees and costs is **DENIED with prejudice**.

### IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss the Amended Complaint and Compel Arbitration is **DENIED without prejudice** and the parties are ordered to conduct limited discovery on the issue of arbitrability, and Defendant's request for attorneys' fees and costs is **DENIED with prejudice**. After limited discovery, Defendant may file a renewed motion to compel arbitration. An appropriate order follows.

Dated: April 8, 2021

*/s/ Brian R. Martinotti*
**BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**
